IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                   21-CR-6100-CJS

RYAN HOWE a/k/a Rylea Autumn,

          Defendant.

---

## PLEA AGREEMENT

The defendant, RYAN HOWE, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and plead guilty to a one-count Information which charges a violation of Title 18, United States Code, Section 231(a)(3) (civil disorder), for which the maximum possible sentence is a term of imprisonment of 5 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms and conditions of the defendant's term of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence,

in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

First, that a civil disorder existed at the time of the violation;

Second, that such civil disorder obstructed, delayed, or adversely affected, in any way or degree, commerce or the movement of any article or commodity in commerce;

Third, that the one or more law enforcement officers were lawfully engaged in the lawful performance of their official duties incident to and during the commission of such civil disorder;

Fourth, that the defendant attempted to commit an act for the intended purpose of obstructing, impeding, or interfering, either by himself or with someone else, with such law enforcement officer or officers; and

Fifth, that such attempt to act was done willfully and knowingly.

A "civil disorder" is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1).

## FACTUAL BASIS

4. The defendant and the government agree to the following facts which form the basis for the defendant's guilty plea including relevant conduct:

   a. On or about September 24, 2020, in the City of Rochester, in the Western District of New York, the defendant, RYAN HOWE a/k/a Rylea Autumn, together with others, attempted to commit acts to obstruct, impede and interfere with any law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed and adversely affected commerce and the movement of any article and commodity in commerce.

   b. During the month of September 2020, there were periods of civil unrest in the City of Rochester in response to incidents involving the deaths of George Floyd and Daniel Prude after encounters with law enforcement officers. There were nights of violent protests that resulted in property damage and looting, and injury to Rochester Police Department (RPD) officers. On September 4, 2020, a group of protesters damaged property and turned over tables at two restaurants, causing numerous patrons to leave. On September 5, 2020, a group of approximately 1,500 protesters blocked an intersection in the City of Rochester for hours, during which time some of the protesters hurled rocks, bottles, lit fireworks, and other objects at police officers, and pointed lasers at police officers, while the police officers were manning metal barricades and engaging in crowd control at the intersection. In addition, one protester struck a police officer in the head with a wooden shield. In connection with the protests on September 5, 2020, law enforcement shut down Exit 14 on Interstate 490 in the City of Rochester for approximately eight hours and the State Street exit on the Inner Loop in the City of Rochester for approximately an hour. On the evening of September 8, 2020, a group of approximately 400 protesters again blocked an intersection in the City of Rochester, and at least one member of the group pointed lasers in the eyes of several police officers who were positioned in the area of the Public Safety Building (PSB). The defendant was not physically present during the protests in Rochester between September 4, 2020, and September 24, 2020, but the defendant was aware of them.

   c. On September 23, 2020, the Kentucky Attorney General announced that a grand jury had declined to indict police officers in relation to the death of Breonna Taylor. In the wake of the Kentucky Attorney General's announcement, several members of the public – including individuals and groups in Rochester – expressed their disagreement with the decision not to charge the officers and declared their intention to

3

protest in the evening on September 24, 2020. Through social media, several of these individuals expressed, in sum and substance, a desire to burn down the City of Rochester. A group of approximately 250 people protested in the streets of Rochester in the evening on September 24, 2020. RPD officers were present at the protest for the purposes of, among other things, ensuring the safety of protesters and the public, and protecting property from damage.

d. The defendant admits and agrees that the actions of the protesters during the month of September 2020 (including September 24, 2020), constituted a civil disorder within the meaning of 18 U.S.C. § 232(1), and that such civil disorder obstructed, delayed, and adversely affected commerce within the meaning of 18 U.S.C. § 232(2).

e. On September 23, 2020, the defendant posted a Facebook message, which included a link to an article about the grand jury's decision not to indict certain officers in the Breonna Taylor case and the statement, "Burn this shit to the fucking ground." The next day, on September 24, 2020, the defendant posted a Facebook message, which read, "Good morning to everyone ready to burn this whole fuckin country to the ground!"

f. On September 24, 2020, at approximately 8:32 a.m., the defendant posted a message on the defendant's Facebook account that consisted of a recipe for a Molotov cocktail and guidance on how to use one against law enforcement officers. Specifically, the Facebook post read as follows,

> 1 part gasoline
> 1 part used motor oil
> 1 part crushed Styrofoam
> Mix until the consistency of a thick paste
> Place in glass containers
> Soak rag in gasoline, tie a knot in the end just big enough to fit through the hole of the bottle, but won't rip out.
> Light wick
> Aim at cop
> Throw

h. At the time of the Facebook post in ¶ 4(f), law enforcement officers from RPD and other agencies were involved in responding to the civil unrest that was occurring in Rochester. Those law enforcement officers were lawfully engaged in the lawful performance of their official duties, that is, they were engaged in, among other things, protecting protesters and members of the public from physical harm, and property from damage and looting. In making the Facebook post, the defendant intended to

4

induce and cause others to obstruct, impede and interfere with law enforcement officers' efforts to perform those official duties by making and throwing Molotov cocktails at such officers.

### III. SENTENCING GUIDELINES

5.   The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.   The government and the defendant agree that Guidelines § 2A2.4(a) applies to the offense of conviction and provides for a base offense level of 10.

### ACCEPTANCE OF RESPONSIBILITY

7.   At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), which would result in a total offense level of 8.

### CRIMINAL HISTORY CATEGORY

8.   It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

9. It is the understanding of the government and the defendant that with a total offense level of 8 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **0 to 6 months, a fine of $2,000 to $20,000, and a period of supervised release of 1 to 3 years**. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

10. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

11. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

12. In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

### IV. STATUTE OF LIMITATIONS

13. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this

agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or the vacating of the conviction becomes final.

## V. REMOVAL

14. The defendant represents that the defendant is a citizen of the United States. However, if the defendant is not a citizen of the United States, the defendant understands that, if convicted, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## VI. GOVERNMENT RIGHTS AND RESERVATIONS

15. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment;

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

7

e.  oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

16. At sentencing, the government will move to dismiss the complaint currently pending against the defendant under Magistrate No. 20-MJ-4198.

17. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII. APPEAL RIGHTS

18. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 9 above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that the statute to which the defendant is pleading guilty (18 U.S.C. § 231(a)(3)) is unconstitutional and that the admitted conduct does not fall within the scope of the statute.

19. The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

20.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 9 above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

21.     This plea agreement represents the total agreement between the defendant, RYAN HOWE a/k/a Rylea Autumn, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

By:     *signature*
BRETT A. HARVEY
Assistant U.S. Attorney

Dated: June 24, 2021

I have read this agreement, which consists of pages 1 through 10. I have had a full opportunity to discuss this agreement with my attorney, Steven G. Slawinski, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
RYAN HOWE
Defendant

Dated: June 24, 2021

_____
STEVEN G. SLAWINSKI, ESQ.
Attorney for the Defendant

Dated: June 24, 2021